# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JARMEL DONTRA CHISEM,

                Petitioner,

v.

DYLON RADTKE,

                Respondent.

Case No. 20-CV-674-JPS

**ORDER**

## 1.     INTRODUCTION

On April 30, 2020, Petitioner Jarmel Dontra Chisem ("Chisem") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. In 2015, Chisem was convicted by a jury in Milwaukee County Circuit Court of: (1) first-degree reckless homicide as a party to a crime while using a dangerous weapon, as a repeater; and (2) first-degree reckless endangerment of safety as a party to a crime while using a dangerous weapon, as a repeater. *State v. Chisem*, 927 N.W.2d 920 (Table), 2019 WL 1035482, at *1, *3 (Wis. Ct. App. Mar. 5, 2019).[1] Thereafter, Chisem was sentenced to "a total of forty-seven years, bifurcated as thirty-three years of initial confinement and fourteen years of extended supervision." *Id.* at *3. Chisem filed a Wis. Stat. § 974.02 post-conviction motion for a new trial pursuant to Wis. Stat. § 809.30, which the circuit court denied. *Id.* at *1. Chisem appealed from the order denying his motion for post-conviction

---

[1]The majority of the facts in this Order derive from the Wisconsin Court of Appeals' recitation. Chisem's Milwaukee County Circuit Court case is *State v. Chisem*, 2014CF003715 (Milwaukee Cnty. Circ. Ct. Aug. 24, 2014), *available at* https://wcca.wicourts.gov/ (last visited Nov. 28, 2022).

relief as well as his judgment of conviction. *Id.* The Wisconsin Court of Appeals affirmed Chisem's judgment of conviction as well as the denial of his post-conviction motion. *Id.* at *7. The Wisconsin Supreme Court denied Chisem's petition for review. *State v. Chisem*, 933 N.W.2d 21 (Table) (Wis. 2019).

Chisem then filed his Section 2254 petition. ECF No. 1. On May 13, 2020, Magistrate Judge William E. Duffin issued a Report and Recommendation ("R&R") in which he recommended dismissing Chisem's habeas petition because two of his five grounds for habeas relief were not exhausted. ECF No. 4; 28 U.S.C. § 2254(b)(1)(a). Specifically, Chisem had not exhausted his claims that: (1) appellate counsel was ineffective for failing to challenge trial counsel's failure to compel an alibi witness to testify; and (2) appellate counsel was ineffective for failing to challenge the sufficiency of the evidence. ECF No. 1 at 1, 12. Chisem acknowledged that these claims were not exhausted in his federal habeas petition and sought a stay so that he could finish the exhaustion process. *Id.* at 12.

In recommending dismissal, Magistrate Judge Duffin explained that Chisem's one-year deadline in which to file a habeas petition would not expire until October 8, 2020. ECF No. 4 at 2. Magistrate Judge Duffin recommended dismissing the petition entirely because, if Chisem wished to exhaust his remaining claims, he had "plenty of time in which to properly file 'an application for State post-conviction or other collateral review with respect to the pertinent judgment or claim' in state court." *Id.* at 2–3 (quoting 28 U.S.C. § 2244(d)(2)). Magistrate Judge Duffin explained that once Chisem filed his post-conviction motion, the one-year statute of limitations on federal habeas claims would be tolled. *Id.* Chisem timely objected to the R&R and sought a stay, but the Court overruled the

objections, finding there was no good cause for Chisem's failure to exhaust and declining to issue a stay and abeyance. ECF No. 8. In lieu of outright dismissing the case, the Court gave Chisem a choice between: (1) dismissing the petition entirely so he could pursue his unexhausted claims in state court; or (2) proceeding only on the exhausted claims. *Id.* at 4.

Chisem filed a motion to reconsider, explaining that, in the time between Magistrate Judge Duffin's R&R and the Court's order adopting the R&R, he had filed a post-conviction motion pursuant to Wis. Stat. § 974.06, thus taking a step toward exhausting his unexhausted claims. ECF Nos. 9, 10. On January 12, 2022, the Court denied the motion for reconsideration, in part because Chisem's Wis. Stat. § 974.06 motion was filed late and "narrowly failed to toll the one-year statute of limitations," which tolling Magistrate Judge Duffin had explained in his screening order. ECF No. 13. In the interim, Chisem had additionally filed a letter with the Court stating that he "will be proceeding only on [the] exhausted grounds." *Id.* at 3 (quoting ECF No. 10). Given "the lack of good cause to permit the stay and abeyance," as the Court had explained in its prior order, "as well as the lapse of the statute of limitations," coupled with Chisem's letter, the Court permitted Chisem to proceed on his three exhausted claims from his amended petition: (1) that his trial should have been severed from that of his codefendant; (2) that his confrontation right was violated by the admission of his codefendant's statements; and (3) that the trial court improperly permitted a witness to testify. *Id.* at 3–4. The Court ordered a briefing schedule at that time. *Id.* at 4–5.

On January 27, 2022, Chisem filed a motion to waive unexhausted claims and to proceed with exhausted claims. ECF No. 16. On January 31, 2022, Respondent Dylon Radtke ("Respondent") filed a response to the

amended petition in accordance with the briefing schedule. ECF No. 17. On March 10, 2022, and on March 25, 2022, Chisem filed two separate motions for an extension of time to file his brief in support of the amended petition. ECF Nos. 18, 19. Chisem filed his brief in support of the amended petition on April 8, 2022, which was eight days past the date set in the briefing schedule. ECF No. 20. On August 12, 2022, the Court denied Chisem's motion to waive unexhausted claims and to proceed on the three exhausted claims as moot, finding that "[t]he Court's January 12, 2022 order detailed this specific outcome and therefore [Chisem's] request is moot." ECF No. 28 at 3. The Court further retroactively granted Chisem's motions for extensions of time and accepted his April 8, 2022 brief as timely filed. *Id.*

Thereafter, Chisem refiled his brief on September 13, 2022, perhaps understanding the Court's August 12, 2022 order as instructing him to refile the brief. ECF No. 29. Respondent moved to strike the refiled brief, which Chisem opposed on the grounds that the Court had granted him an extension of time to file his brief. ECF No. 31. Chisem is correct that the Court granted him an extension of time to file his brief, but in so doing, the Court accepted his late-filed April 8, 2022 brief; it did not order him to refile the brief. Thus, the Court will consider in this Order the parties' fully briefed positions as laid out in: (1) Chisem's April 8, 2022 brief in support, ECF No. 20; (2) Respondent's June 3, 2022 brief in opposition, ECF No. 21; and (3) Chisem's July 5, 2022 brief in reply, ECF No. 23. Consequently, the Court will deny as moot Respondent's motion to strike, ECF No. 30.

Separately, on July 13, 2022, Chisem filed a motion to appoint counsel and for an evidentiary hearing, ECF No. 24, which Respondent opposed on July 19, 2022, ECF No. 25. That motion and the amended merits petition are now before the Court. For the reasons explained below, the

Court finds that Chisem's amended petition is without merit and, therefore, will deny it. The Court will further deny Chisem's motion to appoint counsel and Chisem's motion for evidentiary hearing. ECF No. 24.

## 2. BACKGROUND

Chisem's charges and conviction stem from a shooting that occurred on June 6, 2014. *Chisem*, 2019 WL 1035482, at *1. Raymond Harris ("Harris") was found lying face down in a pool of blood with multiple gunshot wounds and was pronounced dead at the scene. *Id.* Another individual, J.W., had been shot in the abdomen but survived. *Id.*

While investigating the shooting, detectives reviewed surveillance footage and discovered that the shots were fired from a silver Saturn SUV. *Id.* at *2. Detectives spoke with a witness, Fabian Edmond ("Edmond"), whose vehicle was also seen in the footage. *Id.* Edmond identified the silver Saturn as having been driven by Chisem earlier on the day of the shooting with Chisem's co-defendant Howard Davis ("Davis") in the passenger seat. *Id.* Edmond also stated that he heard the shots and that they had come from the silver Saturn. *Id.* Finally, Edmond said that the day after the shooting, Chisem and Davis came to his place of employment and that Davis instructed Edmond to say he did not know anything if the police questioned him about the shooting. *Id.* at *2, *4.

Detectives also spoke with another witness, Earnest Davis ("Earnest"), who was with Edmond at the time of the shooting. *Id.* at *2. Earnest stated that he had seen Chisem driving the silver Saturn the day before the shooting. *Id.* He further informed detectives that he saw shots being fired from that vehicle. *Id.* Finally, he told police that he saw Howard

Davis[2] and Chisem shortly after the shooting. *Id.* Howard Davis was sweating and threw his shirt into the garbage. *Id.* Chisem told Earnest not to speak about the incident. *Id.* Harris's sister, Deion Smith ("Smith"), additionally told detectives that Harris told her that Harris had shot Howard Davis in the summer of 2013. *Id.*; ECF No. 17-2 at 24.

Police later located the silver Saturn, which belonged to Chisem's girlfriend. *Chisem*, 2019 WL 1035482, at *2. Chisem and Davis were arrested and charged. *Id.* While Chisem and Davis were in jail awaiting trial, detectives received information from Jamil Tubbs ("Tubbs"), an inmate incarcerated with Chisem and Davis. *Id.* Tubbs stated that he overheard Chisem and Davis talking and laughing about the shooting. *Id.* Tubbs also said that he heard Davis tell Chisem that Chisem "should have put the truck in the garage to hide it" and that he heard Davis state that he (Davis) had shot J.W. *Id.* Another inmate incarcerated with Chisem and Davis, Willie Nelson ("Nelson"), told police that he had several conversations with Davis regarding the shooting. *Id.* Specifically, Nelson informed police that Davis told him that Davis "had been jumped and been shot" previously by Harris, which was Davis's "motive for shooting Harris." *Id.* at *2, *4. Police subsequently searched Davis's cell and discovered rap lyrics written by Davis about the shooting. *Id.* at *2.

Following these events and prior to trial, Chisem moved to sever his trial from Davis's. *Id.* Chisem argued that "certain evidence relating solely to Davis—his inculpatory statements to Tubbs and Nelson relating to the

---

[2]To avoid confusion, as co-defendant Howard Davis and unrelated witness Earnest Davis have the same last name, the Court refers to Earnest Davis as "Earnest" and reinstates Howard Davis's full name in this paragraph. All other references in this Order to "Davis" refer to co-defendant Howard Davis.

shooting of Harris and his motive for the shooting, as well as the rap lyrics discovered in his cell—would be prejudicial to Chisem." *Id.* The State opposed severance, arguing that "introducing evidence to be used against only one codefendant is not a 'unique situation' mandating severance." *Id.* The State further noted that "antagonistic defenses had not been asserted, and that the jury could be properly instructed to consider the crimes charged against each defendant and the evidence as it pertains to each defendant separately and distinctly." *Id.* The trial court agreed and denied Chisem's motion. *Id.*

The case proceeded to trial in March 2015. At trial, the State called witnesses J.W.; Edmond; Earnest; Smith; Tubbs; Nelson; Khijuan Parker ("Parker"), who was with J.W. when he was shot, saw the silver Saturn at the scene, and saw shots come from the area where the silver Saturn was parked; Detective Matthew Bell ("Bell"), who testified about the statement he received from Tubbs; and Detective Timothy Graham ("Graham") who testified that Nelson's statement implicated Chisem as well as Davis in the shooting, including an explanation as to losing a recording device he had been using when he spoke with Nelson and received the statement from Nelson. *Id.* The jury found Chisem guilty of first-degree reckless homicide as a party to a crime while using a dangerous weapon, as a repeater, and first-degree reckless endangerment of safety as a party to a crime while using a dangerous weapon, as a repeater. *Id.* at *3. The jury found Chisem not guilty of possession of a firearm. *Id.* Chisem was sentenced to a total term of 47 years, bifurcated as 33 years of initial confinement and 14 years of extended supervision. *Id.*

Chisem filed a post-conviction motion requesting a new trial. *Id.* Therein, he argued that the trial court erred in denying his motion for

severance, "based on the premise that his right to confrontation was violated because certain out-of-court statements by Davis were admitted and used as evidence against Chisem, but he was unable to cross-examine Davis regarding those statements since Davis did not testify." *Id.* The specific statements as to which Chisem challenged admissibility were made by Davis to the following individuals "regarding the shooting of Harris, as well as [Davis's] motive for the shooting":

- Edmond, who testified that the day after the shooting both Chisem and Davis came to his workplace, where Davis instructed Edmond not to say anything about the shooting;
- Tubbs, who testified that while incarcerated with Chisem and Davis, he overheard a conversation by the defendants discussing the shooting, heard Davis say that he had shot J.W., and told Chisem that he should have hidden the truck in a garage; and
- Nelson, who testified that while incarcerated with Davis and Chisem, Davis told Nelson that his motive for shooting Harris was that Harris had shot him the previous summer.

*Id.* at *4. Chisem further argued that those out-of-court statements—"made to Edmond, Tubbs, and Nelson, and admitted as admissions of a party opponent—would have been inadmissible hearsay in a separate trial against Chisem." *Id.* at *2. Finally, Chisem challenged the admission of Nelson's testimony because Graham had lost the recording of Nelson's statement; "Chisem asserted that this was a discovery violation since he was not provided with that recording." *Id.* These three arguments constitute the three exhausted grounds for habeas review in the instant amended petition. ECF Nos. 11, 13.

The circuit court denied Chisem's motion. First, the circuit court found "that there was no Confrontation Clause violation because Davis's statements were nontestimonial and thus not covered by the Confrontation Clause." *Id.* Second, the circuit court held that "the State's argument that the evidence against Davis was also attributable to Chisem as a party to the crime was very persuasive" and, at a separate trial against Chisem, the out-of-court statements "would not have been excluded as inadmissible hearsay . . . with the exception of Nelson's testimony." *Id.* However, the circuit court determined that "the admission of Nelson's testimony was harmless error." *Id.* Finally, the circuit court concluded that "there was no discovery violation that resulted from the lost recording of Nelson's statement because there was no evidence that [] Graham acted in bad faith with the loss of the recording, and further, the admission of Nelson's testimony had been deemed harmless." *Id.* The Wisconsin Court of Appeals affirmed, *id.* at *7, and the Wisconsin Supreme Court denied review, *Chisem*, 933 N.W.2d 21.

While Chisem presented all three of his grounds for relief in the instant amended petition to the Wisconsin Court of Appeals for review, the sole issue presented to the Wisconsin Supreme Court was the alleged Confrontation Clause violation. ECF No. 17-4 at 12.

**3.      LEGAL STANDARD**

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner in custody pursuant to a state-court judgment of conviction is entitled to federal habeas relief only if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

With respect to claims adjudicated on the merits in state court, a federal court can grant an application for a writ of habeas corpus "only if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in state court." *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010) (citing 28 U.S.C. § 2254(d)); *see also White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006). Importantly, federal habeas review is not available, and federal courts lack jurisdiction, where "a question of federal law decided by a state court . . . rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1992).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013). A state-court decision is based on an unreasonable determination of the facts "when it 'rests upon fact-finding that ignores the clear and convincing weight of the evidence.'" *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White*, 134 S. Ct. at 1702).

Indeed, the habeas petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

A federal court may also grant habeas relief on the alternative ground that the state court's adjudication of a constitutional claim was

Case 2:20-cv-00674-JPS   Filed 11/28/22   Page 11 of 35   Document 34

based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). The underlying state court findings of fact and credibility determinations are, however, presumed correct. *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013). The petitioner overcomes that presumption only if he proves by clear and convincing evidence that those findings are wrong. 28 U.S.C. § 2254(e)(1); *Campbell*, 770 F.3d at 546. "A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey*, 735 F.3d at 949–50 (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). If shown, an unreasonable factual determination by the state court means that this Court must review the claim in question *de novo*. *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008).

4.    **ANALYSIS**

    4.1    **Chisem's Motion to Appoint Counsel**

    Chisem requests that the Court appoint him counsel in this case. ECF No. 24. The Criminal Justice Act, 18 U.S.C. § 3006A(a)(2)(B), authorizes a district court to appoint counsel for a petitioner seeking habeas relief under 28 U.S.C. § 2254. Before the Court appoints counsel, however, it must determine whether the appointment would serve "the interests of justice" and whether the petitioner is "financially eligible." *See* 18 U.S.C. § 3006A(a)(2). Appointing counsel for pro se petitioners in habeas corpus cases is a power commended to the discretion of the district court in all but

Case 2:20-cv-00674-JPS   Filed 11/28/22   Page 12 of 35   Document 34

the most extraordinary circumstances. *Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997).

In this instance, the Court is not convinced that appointment of counsel would serve the interests of justice. In determining whether the interests of justice will be served by appointing counsel, the Court considers the difficulty of the case and the petitioner's ability. It is significant that in most habeas cases the issues raised in federal court have been raised and fully considered in state court. *See* 28 U.S.C. § 2254(b)(1)(A). This means that typically, assuming he was represented by counsel in state court proceedings, the petitioner will have the benefit of his previous attorney's briefing on the very same issues he seeks to raise in federal court. That is true in this case.

The three Grounds Chisem presents, ECF Nos. 11, 13, were already well-developed in the state court proceedings. Indeed, based on the Court's review of the amended petition, answer and exhibits attached thereto, not only does the Court find appointment of counsel unnecessary, it also concludes that further briefing is unnecessary and will proceed to decide the case on the record before it. Accordingly, Chisem's motion to appoint counsel will be denied.

### 4.2 Chisem's Motion for Evidentiary Hearing

Chisem moves for an evidentiary hearing under 28 U.S.C. § 2254(e)(2). ECF No. 24 at 3. In support, Chisem argues that "[i]n Wisconsin, for a defendant to be granted an evidentiary hearing[,] he or she must allege facts which, if true, would entitle a defendant to relief." *Id.* (citing *State v. Bentley*, 548 N.W.2d 50, 53–54 (Wis. 1996)).

Chisem contends that he has alleged sufficient facts supporting a Confrontation Clause violation and thus should be granted an evidentiary

hearing. *Id.* However, the standard for an evidentiary hearing under Wisconsin law is not the applicable standard; rather the Section 2254(e)(2) standard is. *Shinn*, 142 S. Ct. at 1734. Under the Section 2254(e)(2) standard, a federal court may hold an evidentiary hearing on a claim "in only two limited scenarios." *Id.* "Either the claim must rely on (1) a 'new' and 'previously unavailable' 'rule of constitutional law' made retroactively applicable by [the U.S. Supreme] Court, or (2) 'a factual predicate that could not have been previously discovered through the exercise of due diligence.'" *Id.* (quoting 28 U.S.C. § 2254(e)(2)(A)). Next, "if a prisoner can satisfy either of these exceptions, he also must show that further factfinding would demonstrate, 'by clear and convincing evidence,' that 'no reasonable factfinder' would have convicted him of the crime charged." *Id.* (quoting 28 U.S.C. § 2254(e)(2)(B)). Nonetheless, "even if all of these requirements are satisfied, a federal habeas court still is not required to hold a hearing or take any evidence." *Id.*

As explained further below, Chisem has identified neither a new or previously unavailable rule of constitutional law made retroactively applicable by the U.S. Supreme Court, nor a factual predicate that could not have been previously discovered through the exercise of due diligence. Indeed, he reiterates the same underlying facts that passed through the state courts already. The Court will deny Chisem's motion for an evidentiary hearing.

### 4.3    Grounds Raised in Amended Petition

As explained further below, Grounds One and Three were not exhausted in the state courts, and thus are procedurally defaulted, as only Ground Two was presented to the Wisconsin Supreme Court for review. That conclusion is largely academic, however, because the Court agrees

with Respondent that "the [unexhausted] severance claim [Ground One] is primarily, if not totally, based on the [exhausted] confrontation claim [Ground Two]," ECF No. 21 at 8 n.1, and that the Wisconsin Court of Appeals dismissed Ground Three on an independent and adequate state law ground, thus rendering it ineligible for federal habeas review in any event, *see id.* at 4. Moreover, the statements underlying the unexhausted and defaulted Ground Three discovery violation claim are also subject to the exhausted Ground Two Confrontation Clause claim, and will be addressed in this Order on that basis.

In light of the standard of review, therefore, the Court must answer the following question: whether Chisem has proven that the Wisconsin Court of Appeals rejected his claim that his Confrontation Clause rights were violated by the admission of Davis's statements in a manner that was contrary to, or involved an unreasonable application of, clearly established federal law; or in a manner that was based on an unreasonable determination of the facts in light of the evidence presented. As explained further below, the Court finds that the answer is no.

### 4.3.1 Trial Severance and Inadmissible Hearsay at a Severed Trial (Ground One) and Nelson's Testimony (Ground Three)

The Wisconsin Court of Appeals heard and adjudicated Chisem's claim that Davis's out-of-court statements—"made to Edmond, Tubbs, and Nelson, and admitted as admissions of a party opponent—would have been inadmissible hearsay in a separate trial against Chisem." *Chisem*, 2019 WL 1035482, at *2. The trial severance and inadmissible hearsay issues constitute Chisem's Ground One in the instant amended petition. ECF No. 11 at 6 (Ground One: "State misused its discretion when it denied Chisem's

Case 2:20-cv-00674-JPS   Filed 11/28/22   Page 15 of 35   Document 34

Motion to sever himself and codefendant Davis for trial because an entire line of evidence relevant to Davis' liability also came in against Chisem which would not have been admissible had Chisem been tried separately.").

The Wisconsin Court of Appeals also heard and adjudicated Chisem's claim challenging the circuit court's decision to permit Nelson to testify despite Graham having lost the recording of Nelson's statement; "Chisem asserted that this was a discovery violation since he was not provided with that recording." *Chisem*, 2019 WL 1035482, at *2. The propriety of the circuit court's decision to permit Nelson to testify despite the lost recording constitutes Chisem's Ground Three, as labeled in the Court's screening order.[3] ECF No. 11 at 9 ("The circuit court misused its discretion in allowing Willie Nelson to testify because the court did not use the correct legal standard (GOOD CAUSE) and because Det. Grahams [*sic*] negligence in losing Nelsons [*sic*] recorded interview does not constitute good cause under the discovery statute.").

However, Chisem procedurally defaulted on both of these Grounds, because he did not present them to the Wisconsin Supreme Court for review. The Seventh Circuit has provided recent instruction on procedural default:

> Procedural defaults take several forms, but two are paradigmatic. On the one hand, a claim might be procedurally defaulted when a petitioner fails to "fairly present" his claim to the state courts, regardless of whether he initially preserved it with an objection at the trial level. To

---

[3]This Ground was labeled Ground Four in the amended petition, but the Court's screening order labels it Ground Three, as the Court determined that the Ground listed as Ground Three in the amended petition is duplicative of Ground One. ECF No. 13 at 3 n.1.

fairly present his federal claim, a petitioner must assert that claim throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings. The complete round requirement means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory. On the other hand, a claim might be procedurally defaulted through a petitioner's initial failure to preserve it with an objection, even if the petitioner later does attempt to present it for review. "[W]hen a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules (*i.e.*, because the petitioner failed to contemporaneously object), that decision rests on independent and adequate state procedural grounds." [*Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010).]

*Richardson v. Lemke*, 745 F.3d 258, 268-69 (7th Cir. 2014) (citations omitted).

As to the first iteration, "fair presentment" requires that the petitioner fully present his federal claims to the state courts, giving the state courts a meaningful opportunity to pass on them. *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006). In Wisconsin, this means presentation of all federal claims subject to the habeas petition must have been made to the Wisconsin Supreme Court. *Grady v. Cooper*, 511 F. Supp. 3d 918, 930 (E.D. Wis. 2021). The factual and legal substance of what the petitioner presents to the federal and state courts must remain similar. *Anderson*, 481 F.3d at 814. This iteration defeats Grounds One and Three. Chisem did not present any of those issues to the Wisconsin Supreme Court; to the Wisconsin Supreme Court, he presented only Ground Two: that the Wisconsin Court of Appeals applied the wrong test to its determination of the Confrontation Clause claim. ECF No. 17-4. Because Chisem did not allow fair

consideration of Grounds One and Three in the Wisconsin courts, this Court must dismiss them from this action.

As noted above, however, this conclusion, though meaningful in form, is academic in substance. The unexhausted Ground One claim largely depends on the Court's holding as to the exhausted Ground Two claim. As to Ground Three, even if it was not procedurally defaulted based on failure to exhaust, it would be unavailable for federal habeas review on the basis of the second iteration of procedural default. Moreover, although the issue underlying Ground Three—the circuit court's decision to permit Nelson to testify despite Graham having lost his recording—is unexhausted and procedurally defaulted, the Court still addresses the admissibility of Davis's out-of-court statements to Nelson in its review of Ground Two.

The second iteration of procedural default cautions that "[w]hen the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground, federal habeas review of the claim is foreclosed." *Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005). "The doctrine applies regardless of whether the state law ground is substantive or procedural." *Richardson*, 745 F.3d at 268. Where the doctrine applies, "[a]ny such ruling on the federal claims would be advisory, given the fact that on remand the state court would still deny petitioner relief on the independent and adequate state law ground." *Woods v. Schwartz*, 589 F.3d 369, 373 (7th Cir. 2009) (citing *Coleman*, 501 U.S. at 729 ("Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory.")).

While "it is not always easy for a federal court to apply the independent and adequate state ground doctrine," courts will presume that there is no independent and adequate state law ground when a state court's adjudication of a federal claim "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Coleman*, 501 U.S. at 735 (citations omitted). It follows that, to apply the doctrine, "[t]he state court must have actually relied on that rule—and not on a parallel or interwoven federal basis—in order to foreclose our review." *Richardson*, 745 F.3d at 269 ("We do not construe genuine ambiguity in favor of the state; if it 'fairly appears' that the state court rested its decision primarily on federal law or is interwoven therewith, a federal court may review the federal question unless the state court's opinion contains a "plain statement" that its decision rests on state grounds.") (citations omitted). Indeed, in *Richardson*, the presumption of no independent and adequate state law ground was overcome where, even though federal case law was cited, the surrounding context of the state court's decision indicated that it did not "rest" or "rely" on federal case law, but rather on an Illinois rule on preservation of claims. *Id.* at 269–70.

Here, the Wisconsin Court of Appeals rested its determination as to Chisem's claim that Nelson should have been excluded from testifying on the basis of the lost recording entirely upon a Wisconsin discovery statute and Wisconsin case law setting the standard to be applied to the Wisconsin discovery statute. *Chisem*, 2019 WL 1035482, at *7. Thus, in addition to being unexhausted, Ground Three is procedurally defaulted in light of the independent and adequate state law ground doctrine. However, as discussed, Davis's statements to Nelson (that were ostensibly relayed to

Graham by Nelson on the lost recording) are included in the out-of-court statements the Court analyzes in its review of Ground Two.

### 4.3.2   Confrontation Clause – Ground Two

In Ground Two, Chisem contends that his Confrontation Clause rights were violated when the circuit court allowed Davis's out-of-court statements to be used as evidence against Chisem at their joint trial where Davis did not testify. ECF No. 20 at 6. Chisem challenges the admission of the statements made by Davis to the following individuals, which were specifically enumerated and analyzed on Confrontation Clause grounds by the Wisconsin Court of Appeals:

- Edmond, who testified that the day after the shooting both Chisem and Davis came to his workplace, where Davis instructed Edmond not to say anything about the shooting;
- Tubbs, who testified that while incarcerated with Chisem and Davis, he overheard a conversation by the defendants discussing the shooting, heard Davis say that he had shot J.W., and told Chisem that he should have hidden the truck in a garage; and
- Nelson, who testified that while incarcerated with Davis and Chisem, Davis told Nelson that his motive for shooting Harris was that Harris had shot him the previous summer.

*Id.* at 7, 17, 22; *Chisem*, 2019 WL 1035482, at *5.

Chisem also challenges the admission of Smith's testimony about Harris's statements to Smith regarding Harris's shooting of Howard Davis[4]

---

[4]Again to avoid confusion, *see supra* n.2, as co-defendant Howard Davis and unrelated witness Vernecia Davis have the same last name, the Court refers to Vernecia Davis as "Vernecia" and reinstates Howard Davis's full name in this paragraph. All other references in this Order to "Davis" refer to co-defendant Howard Davis.

in 2013. ECF No. 20 at 24. Finally, Chisem challenges the admission of statements made by Howard Davis to Vernecia Davis ("Vernecia"), a friend of Harris's mother. *Id.* at 22. Howard Davis's statements to Vernecia were that Harris had shot Howard Davis in 2013, and that Vernecia was not to say anything about that incident. ECF No. 17-2 at 25. Smith's testimony and Howard Davis's statements to Vernecia were raised in Chisem's brief to the Wisconsin Court of Appeals. *Id.* at 24–25, nn. 4–5 (arguing that Harris's statements to Smith are "relevant and probative of [Howard] Davis'[s] guilt" and that Howard Davis's statements to Vernecia are "admissible against [Howard] Davis as a statement by a party opponent," but would not be relevant or admissible, respectively, against Chisem in a severed trial).

As mentioned, the sole issue that Chisem presented to the Wisconsin Supreme Court, *see supra* Section 4.3.1, was the admissibility of Davis's out-of-court statements on Confrontation Clause grounds. Although the Wisconsin Court of Appeals did not specifically address Davis's statements to Vernecia, the same review the Court takes up next as to the Confrontation Clause applies to those statements. As to the relevancy challenges regarding Harris's statements to Smith, relevancy was not exhausted, as it was not raised before the Wisconsin Supreme Court. Even so, although the Wisconsin Court of Appeals did not directly address Smith's statements, it addressed the relevancy argument as to other statements, holding that out-of-court statements relevant to Davis's guilt and motive are also "relevant to Chisem's case because he was charged as a party to a crime." *Chisem*, 2019 WL 1035482, at *4. The bases for the holding were Wisconsin's "Parties to crime" and "Definition of relevant evidence" statutes. *Id.* (citing Wis. Stat. §§ 939.05(2), 904.01)). Thus, in addition to being unexhausted, this

argument is procedurally defaulted on the basis of an adequate and independent state law ground.

Consequently, the Court turns to its analysis of the sole exhausted ground: whether Chisem has proven that the Wisconsin Court of Appeals rejected his claim that his Confrontation Clause rights were violated by the admission of Davis's statements in a manner that was contrary to, or involved an unreasonable application of, clearly established federal law; or in a manner that was based on an unreasonable determination of the facts in light of the evidence presented. Here, the Wisconsin Court of Appeals specifically addressed Chisem's argument and thoroughly analyzed the applicable state and federal case law. *Chisem*, 2019 WL 1035482, at *4–*6.

First, the Wisconsin Court of Appeals noted that "[a] defendant has the right to confront witnesses against him or her, as guaranteed by the Sixth Amendment to the United Stated Constitution as well as the Wisconsin Constitution." *Id.* at *4 (citing *State v. Nieves*, 897 N.W.2d 363, 369 (Wis. 2017)). Still, however, "as demonstrated by Davis, a defendant also has a constitutional right against self-incrimination afforded by the Fifth Amendment." *Id.* "As a result, 'tension' between these two constitutional rights may arise in cases where defendants are tried jointly." *Id.* This tension led to the development of the *Bruton* doctrine, which holds that admission of a co-defendant's statement inculpating the defendant cannot be introduced at a joint trial where the co-defendant does not take the stand. *Bruton v. United States*, 391 U.S. 123, 126 (1968).

The Wisconsin Court of Appeals next observed that the exact issue Chisem presented was recently addressed by the Wisconsin Supreme Court in *Nieves*. There, the Wisconsin Supreme Court, relying on the U.S. Supreme Court's holding in *Crawford v. Washington*, 541 U.S. 36 (2004) and its

Case 2:20-cv-00674-JPS   Filed 11/28/22   Page 22 of 35   Document 34

progeny, held that "in cases where inculpatory statements of a non-testifying codefendant are nontestimonial, the confrontation rights of the codefendant challenging the admission of those statements are not violated." *Id.* (citing *Nieves*, 897 N.W.2d at 366). Like certain of the statements in Chisem's case (i.e., the statements by Davis to Tubbs and Nelson), the statements in *Nieves* were jailhouse statements made to fellow inmates. Looking to U.S. Supreme Court case law, the *Nieves* court held that statements made by one inmate to another are "clearly nontestimonial." *Nieves*, 897 N.W.2d at 375 (quoting *Dutton v. Evans*, 400 U.S. 74, 87–89 (1970)); *Chisem*, 2019 WL 1035482, at *5 (discussing the same). Whether a statement is testimonial, the *Nieves* court continued, depends on "[t]he context in which [the] statement is made." *Id.* at 374; *see also Chisem*, 2019 WL 1035482, at *5 (discussing the same). "Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." *Id.* at 375 (quoting *Ohio v. Clark*, 576 U.S. 237, 248–49 (2015)); *see also Chisem*, 2019 WL 1035482, at *5 (discussing the same).

Before the Wisconsin Court of Appeals, Chisem argued that *Nieves* did not explicitly overrule the Wisconsin Supreme Court's prior holding in *State v. Manuel*, 697 N.W.2d 811 (Wis. 2005). In "an abundance of caution," the *Manuel* court had retained the U.S. Supreme Court's analysis in *Ohio v. Roberts*, 448 U.S. 56 (1980) because *Crawford* "reupdiate[ed], [but did] not overrul[e]" *Roberts*. 697 N.W.2d at 817. The *Roberts* analysis "interpreted the [Confrontation] Clause to permit the admission of out-of-court statements by an unavailable witness, so long as the statements bore 'adequate indicia of reliability.'" *Clark*, 576 U.S. at 244 (quoting *Roberts*, 448 U.S. at 66). In contrast, the *Crawford* analysis examined the meaning of the words

"witnesses" and "testimony" in the Confrontation Clause, and taught that there was a difference between "testimonial" out-of-court statements by a nontestifying witness, and "nontestimonial" statements by a nontestifying witness. *Id.* The former cannot be admitted unless the witness is "unavailable to testify, and the defendant had had a prior opportunity for cross-examination," while the *Crawford* Court "afford[ed] the States flexibility" as to the latter, which expressly included allowing states to adopt "an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Crawford*, 541 U.S. at 68. The *Crawford* Court implied that the *Roberts* approach could be one such approach taken by states as to nontestimonial statements. *Id.*

The *Manuel* court, in its 2005 decision without the benefit of additional guidance from the U.S. Supreme Court, retained *Roberts*. *Manuel*, 697 N.W.2d at 826 ("While the *Crawford* Court abrogated *Roberts* by highlighting its shortcomings and failures, the Court declined to overrule *Roberts* and expressly stated that the states were free to continue using *Roberts* when dealing with nontestimonial hearsay.").

However, in 2017, the Wisconsin Supreme Court had occasion to revisit the issue in *Nieves*, this time with additional guidance from the U.S. Supreme Court. 897 N.W.2d at 371. The *Nieves* court, relying on U.S. Supreme Court decisions since *Crawford* that hold that "the Confrontation Clause applies only to testimonial statements," rejected the *Roberts* test. *Id.* The *Nieves* court then held that, given the *Crawford* "seismic shift in how courts analyze the Confrontation Clause," the *Bruton* doctrine, as a result, is now "limited to cases in which a non-testifying codefendant's statement was testimonial." 897 N.W.2d at 372–73 (citing *United States v. Berrios*, 676 F.3d 118, 128 (3d Cir. 2012) ("[B]ecause Bruton is no more than a by-product

of the Confrontation Clause, the Court's holdings in *Davis* and *Crawford* likewise limit Bruton to testimonial statements."); *United States v. Figueroa-Cartagena*, 612 F.3d 69, 85 (1st Cir. 2010) ("It is . . . necessary to view *Bruton* through the lens of *Crawford* and *Davis*."); *United States v. Wilson*, 605 F.3d 985, 1017 (D.C. Cir. 2010) ("The appellants have no *Bruton* claim, however, because Franklin's concessions through counsel do not implicate the Confrontation Clause."); *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009) ("Because it is premised on the Confrontation Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements."); *United States v. Spotted Elk*, 548 F.3d 641, 662 (8th Cir. 2008) (*Bruton* does not apply to nontestimonial statements); *United States v. Clark*, 717 F.3d 790, 816 (10th Cir. 2013 (same)).

The Wisconsin Court of Appeals rejected Chisem's argument that *Nieves* did not overrule *Manuel*. *Chisem*, 2019 WL 1035482, at *5 ("Given our supreme court's holding in *Nieves*—which Chisem acknowledges is 'unambiguous'—and its rejection of the reasoning in *Roberts*, it follows that it also effectively rejected the reasoning in *Manuel*. Therefore, we apply the *Nieves* rule to this case, and conclude that Davis's statements were nontestimonial."). Thus, because all of the implicated statements—Davis's statements to Edmond, Tubbs, and Nelson—were nontestimonial, the Wisconsin Court of Appeals found "no violation of Chisem's right to confrontation." *Id.*[5]

---

[5]It is on this point that the Court explained, *supra* pp. 14–15, that the unexhausted Ground One (severance) relies upon the exhausted Ground Two (Confrontation Clause). *See Chisem*, 2019 WL 1035482, at *5 ("Along a similar line of reasoning, Chisem next argues that severance was mandatory under Wis. Stat. § 971.12(3) . . . . The *Nieves* court also addressed this statutory issue. It concluded that *Crawford* and its progeny had 'limited the application of the *Bruton* doctrine

In support of the instant amended petition, Chisem argues that the Seventh Circuit's decision in *Brown v. Vanihel*, 7 F.4th 666 (7th Cir. 2021) supports habeas relief. ECF No. 20 at 11. There, the district court granted habeas relief on the petitioner's claim that his trial counsel was ineffective for failing to ask for a limiting instruction. *Brown*, 7 4th at 668. Specifically, the Seventh Circuit observed (on an appeal that was later dismissed as moot) that

> The root of the problem was a *Bruton* problem in Brown's joint trial . . . . The court admitted an out-of-court statement (a jailhouse confession to another detainee) by the co-defendant. The statement was hearsay as to Brown but implicated him in the fatal shooting. Brown had no ability to cross-examine the declarant, his co-defendant. Brown's trial lawyer failed even to ask for a limiting instruction, and the district court found that the failure amounted to deficient performance and prejudiced Brown.

*Id.* The limiting instruction/ineffective assistance of counsel claim was raised as ground two before the district court, while the broader Confrontation Clause/*Bruton* claim was raised as ground one before the district court. *Brown v. Brown*, No. 13-CV-1981, 2015 WL 1011371, at *1 (S.D. Ind. Mar. 2, 2015). The district court originally held that the limiting instruction/ineffective assistance of counsel claim was procedurally defaulted because it had not been presented to the state courts, and ordered further briefing on the broader Confrontation Clause/*Bruton* claim. *Id.* at *4.

---

to instances in which a codefendant's statements are testimonial' and, as a result, '*Bruton* is not violated by the admission of a non-testifying codefendant's statements that are nontestimonial.'") (quoting *Nieves*, 897 N.W.2d at 335–36).

The Seventh Circuit reversed and remanded on the limiting instruction/ineffective assistance of counsel claim, holding as a matter of first impression that the *Martinez-Trevino* doctrine applies in Indiana and, therefore, "ineffective assistance of post-conviction counsel may constitute cause and prejudice to overcome procedural default of Mr. Brown's claim that his trial counsel was ineffective when he failed to request a limiting instruction regarding a witness's recounting of incriminating statements made by Mr. Brown's codefendant." *Brown v. Brown*, 471 F. Supp. 3d 866, 871 (S.D. Ind. 2020) (citing *Martinez v. Ryan*, 566 U.S. 1, 14 (2012); *Trevino v. Thaler*, 569 U.S. 413, 423 (2013)). Thereafter, the district court granted habeas relief on the grounds that "the remaining evidence [against the petitioner at trial] is circumstantial and not conclusive," and, therefore, there was a reasonable probability of acquittal had the petitioner's trial counsel secured a limiting instruction "preventing the jury from using [a witness's] out-of-court statement[s]" against the petitioner at trial *Id.* (internal citations omitted).

Chisem argues that, like the *Brown* defendant's lawyer, his trial counsel "failed to even ask for a limiting instruction." ECF No. 20 at 11. The problem is that Chisem has not exhausted any ineffective assistance of counsel claim, ECF No. 8, and the Seventh Circuit has held that the *Martinez-Trevino* doctrine does not apply in Wisconsin. *Nash v. Hepp*, 740 F.3d 1075, 1079 (7th Cir. 2014) (*Martinez-Trevino* does not apply in Wisconsin because "Wisconsin law expressly allows—indeed in most cases requires—defendants to raise claims of ineffective assistance of trial counsel as part of a consolidated and counseled *direct* appeal, and provides an opportunity to develop an expanded record"). Chisem contends that he has now raised an ineffective assistance of counsel claim as to failure to make a

limiting instruction in a post-conviction motion under Wis. Stat. § 974.06. ECF No. 11 at 12; ECF No. 20 at 12. The circuit court denied his motion on April 12, 2021, and the motion is now before the Wisconsin Court of Appeals.[6] Thus, the claim is not exhausted, and *Martinez-Trevino* does not provide cause to excuse the default as it did in *Brown*. *See also, e.g.*, *Whyte v. Winkleski*, 34 F.4th 617, 624 (7th Cir. 2022).

Notwithstanding that *Martinez-Trevino* does not apply in Wisconsin, Chisem argues that his failure to exhaust should be excused on the basis of cause and prejudice, as well as on the basis of a resulting fundamental miscarriage of justice. ECF No. 20 at 13–14; *see also Bolton v. Apore*, 730 F.3d 685, 696 (7th Cir. 2013) ("Procedural default may be excused, however, if the petitioner can show both cause for and prejudice from the default, or can demonstrate that the district court's failure to consider the claim would result in a fundamental miscarriage of justice.").

In his moving brief, Chisem argues that the cause to excuse his default is that his trial counsel was constitutionally ineffective by "fail[ing] to request a limiting instruction as it relates to the out-of-court hearsay statement made by codefendant to another jailhouse detainee. This failure was deficient as to trial counsel and is the exact type of external impediment that prevented the petitioner from presenting his claim." ECF No. 20 at 13. "[I]neffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim." *Whyte*, 34 F.4th at 624 (quoting *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000)). However, Chisem, in substance, argues that

---

[6] *State v. Chisem*, 2014CF003715 (Milwaukee Cnty. Circ. Ct. Aug. 24, 2014), *available at* https://wcca.wicourts.gov/ (last visited Nov. 28, 2022).

the underlying ineffective assistance of trial counsel claim should itself serve as cause; he does not argue, for example, that his counsel on direct appeal was ineffective for failing to raise the ineffective assistance of trial counsel claim in his initial appeal. This is not the type of ineffective assistance of counsel "cause" that the case law supports. *Cf. Brown*, 471 F. Supp. 3d at 371 (*Martinez-Trevino* applies in Indiana and can provide cause to excuse procedural default of ineffective assistance of post-conviction counsel claim for failure to raise ineffective assistance of trial counsel).

In his reply brief, however, Chisem raises a claim for ineffective assistance of post-conviction counsel for failing to bring the underlying ineffective assistance of trial counsel claim. ECF No. 23 at 2. Chisem explains that both the underlying ineffective assistance of trial counsel claim and the ineffective assistance of post-conviction claim remain pending before the Wisconsin Court of Appeals as subject to Chisem's Wis. Stat. § 974.06 motion. As explained above, the Court gave Chisem a choice between dismissing his petition without prejudice while he completed the exhaustion process, or to proceed on only the unexhausted grounds. ECF No. 8. Chisem chose the latter. ECF Nos. 10, 16. While "[m]eritorious claims of ineffective assistance can excuse a procedural default," "those claims must themselves be preserved." *Richardson*, 745 F.3d at 272 ("In order to use the independent constitutional claims of ineffective assistance of trial and appellate counsel as cause to excuse a procedural default, a petitioner is required to raise the claims through one full round of state court review, or face procedural default of those claims as well.") (internal citations omitted); *see also Shinn v. Ramirez*, 142 S.Ct. 1718, 1732 (2022) ("[T]o allow a state prisoner simply to ignore state procedure on the way to federal court would defeat the evident goal of the exhaustion rule."). Thus, Chisem has

not established cause. Chisem's "failure to show cause to excuse his default means that [the Court's] review is foreclosed; we need not consider the question of actual prejudice." *Richardson*, 745 F.3d at 267.

Alternatively, Chisem argues that if the ineffective assistance of counsel claims are unexhausted, which the Court concludes they are, a fundamental miscarriage of justice would result if the Court does not review the claims because "the circuit court['s] decision was based on an unreasonable determination of the evidence presented in state court." ECF No. 20 at 14. Chisem further contends that "[t]he trial court failed to even give an explanation as to why it denied the claim[s] and merely adopted the language in the state's response brief saying QUOTE: the state[']s response brief exposes them for what they are: conclusory, unsupported and not clearly stronger than the claims raised on appeal. Also this decision was contrary to clearly established Supreme Court precedent in *Strickland*." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668 (1984)).

The Court discerns that Chisem is referencing the circuit court's decision on his Wis. Stat. § 974.06 motion as to the ineffective assistance of trial and post-conviction counsel claims, which are currently pending before the Wisconsin Court of Appeals. As the Court explained, those claims are unexhausted. Even if they were not, the Court gleans, based on the quoted language, that the circuit court's decision on the Wis. Stat. § 974.06 motion was based on the *Romero-Georgana* doctrine. *State v. Romero-Georgana*, 849 N.W.2d 668, 679 (Wis. 2014) (to newly raise issues that could have been raised on direct appeal in a motion for post-conviction relief, a petitioner must "show that a particular nonfrivolous issue was *clearly stronger* than issues" that were presented on direct appeal) (citations omitted) (emphasis in original). The *Romero-Georgana* doctrine is an

independent and adequate state procedural ground that precludes federal habeas review. *Whyte*, 34 F.4th at 625; *see also Bolton*, 730 F.3d at 696 ("Procedural default generally precludes a federal court from reaching the merits of a habeas claim when the claim was not presented to the state courts *and it is clear that the state courts would now find the claim procedurally barred*.") (emphasis added).

Chisem nonetheless has not established that a fundamental miscarriage of justice would occur if the Court does not consider the unexhausted claims. "A fundamental miscarriage of justice occurs when 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Wright v. Clark*, 96 F. Supp. 2d 757, 759–60 (N.D. Ill. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). The Wisconsin Court of Appeals specifically reviewed the "credible evidence against Chisem presented at trial, outside of th[e] challenged statements." *Chisem*, 2019 WL 1035482, at *6. This evidence included:

- The surveillance video from the neighboring business showing shots being fired from the silver Saturn;
- The statement of Parker, who saw the Saturn at the scene of the shooting;
- The unchallenged statements by Edmond regarding seeing Chisem and Davis in the silver Saturn earlier on the day of the shooting, and being at the scene of the shooting where he heard shots come from that vehicle;
- The statements of Earnest, who was with Edmond, and saw shots being fired from the Saturn;
- The Saturn being found at the home of Chisem's girlfriend;
- The unchallenged statement of Tubbs that he heard both Chisem and Davis discussing the shooting while incarcerated with them.

*Id.* The Wisconsin Court of Appeals concluded that this evidence was "sufficient to support the verdict against Chisem without the allegedly

inadmissible statements." *Id.* The Court will not disturb the Wisconsin Court of Appeals' determination of the facts; such determination does not "ignore[] the clear and convincing weight of the evidence." *McManus*, 779 F.3d at 649.[7] Moreover, Chisem does not offer any alternative evidence or proof to establish his actual innocence. *Wright*, 96 F. Supp. 2d at 760; *see also Coy v. Iowa*, 487 U.S. 1012, 1021–22 (1988) (Confrontation Clause errors subject to harmless error analysis; "harmlessness must . . . be determined on the basis of the remaining evidence").

Thus, the Court finds that the Wisconsin Court of Appeals properly applied established federal law when it held that Davis's statements to Edmond, Tubbs, and Nelson were nontestimonial, and, therefore, there was no Confrontation Clause violation. The same is true as to Davis's statements to Vernecia. Further, the Wisconsin Court of Appeals' application of federal law was reasonable given the facts of this case. Indeed, Ground Two appears to be nothing more than an attempt at a "do-over" in this Court. In support of Ground Two, Chisem parrots precisely the same arguments he and his counsel have made all along, in the hope that this Court will disagree with those before it. This is not an appropriate use of a federal habeas petition. In any event, the Wisconsin Court of Appeals' decision was far from unreasonable. Rather, it was entirely consistent with federal law. At the very least, Chisem has not shown that all fairminded jurists would disagree with the Wisconsin Court of Appeals' reasoning. He is not, therefore, entitled to federal habeas relief as to his sole exhausted ground: Ground Two.

---

[7] In this regard, Chisem's case differs significantly from the petitioner's case in *Brown*, discussed *supra* pp. 26–28.

The Court separately determines that Chisem's ineffective assistance of trial counsel claim as to the limiting instruction, as well as his ineffective assistance of post-conviction counsel claim, are not exhausted, and he has not established cause therefore, or that failure to consider the claims will result in a fundamental miscarriage of justice. The claims remain pending before the Wisconsin Court of Appeals.

**5.    CONCLUSION**

Chisem has not shown that the Wisconsin Court of Appeals incorrectly and unreasonably applied clearly established federal law as to his Confrontation Clause claim (the sole exhausted Ground Two claim). Likewise, Chisem has not shown that the Wisconsin Court of Appeals' decision rejecting his Confrontation Clause claim was based on an unreasonable determination of the facts in light of the evidence presented in state court. Chisem's amended petition must, therefore, be denied and his case dismissed with prejudice.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the [habeas] applicant." To obtain a certificate of appealability, Chisem must make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the amended petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). For the reasons discussed above, no reasonable jurists could debate whether Chisem's exhausted Ground Two claim and unexhausted Ground One and

Ground Three claims have merit. The Court will, therefore, deny Chisem a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner Jarmel Dontra Chisem's amended petition for a writ of habeas corpus, ECF No. 11, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** Petitioner Jarmel Dontra Chisem's motion to appoint counsel and for an evidentiary hearing, ECF No. 24, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Respondent Dylon Radtke's motion to strike, ECF No. 30, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner Jarmel Dontra Chisem's amended petition, ECF No. 11, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly

Dated at Milwaukee, Wisconsin, this 28th day of November, 2022.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.